UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| D.L., a minor, by and through his parents, K.L. and I.L.,<br><br>Plaintiff,<br><br>vs.<br><br>SHORELINE UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Case No: C 09-04753 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Docket 20 ] |

Plaintiff, a minor, by and through his parents, filed this action on October 6, 2010 against Defendant, seeking an order that would (1) reverse portions of the August 3, 2009 decision of the California Office of Administrative Hearings ("OAH") regarding Plaintiff, and (2) award relief under the Individuals with Disabilities Education Act, as amended by the Individuals with Disabilities Educational Improvement Act of 2004 ("IDEA"), 20 U.S.C. §§ 1400, et seq. Dkt. 1. Plaintiff asserts federal jurisdiction under 20 U.S.C. § 1415(i)(3)(A).

Presently before the Court is Plaintiff's Motion for Preliminary Injunction, brought under the "stay put" provision of the IDEA. Dkt. 20. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

I.  **BACKGROUND**

   A.   **IDEA**

      1.   **Statutory Framework**

The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related

services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A) (bracketed material added).

Under Part B of the IDEA, a state must provide disabled children between the ages of three and twenty-one with special education and related services under an Individualized Education Program ("IEP").[1] 20 U.S.C. §§ 1412(a)(1)(A), (a)(4). An IEP is a written statement that is developed for each disabled child by an IEP team, typically consisting of the parents, a special education teacher, a representative of the local education agency, an expert, and, sometimes, the child. 20 U.S.C. § 1414(d); Christopher v. Stanislaus County Office of Educ., 384 F.3d 1205, 1208 n.1 (9th Cir. 2004).

Parents who are dissatisfied with an IEP may file a complaint triggering a meeting with the IEP team "where the parents of the child discuss their complaint" and the educational agency "is provided the opportunity to resolve the complaint …." 20 U.S.C. § 1415(f)(1)(B)(i)(IV). If the complaint is not resolved "to the satisfaction of the parents within 30 days of the receipt of the complaint," the parents may request a due process hearing. 20 U.S.C. § 1415(f)(1)(B)(ii). Following such a hearing, "[a]ny party aggrieved by the findings and decision … shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A).

### 2.     "Stay Put" Provision

While such administrative or subsequent judicial proceedings are pending, the "stay put" provision of the IDEA entitles the child to remain in his or her "current educational placement." 20 U.S.C. § 1415(j); L.M. v. Capistrano Unified School Dist., 556 F.3d 900, 911 (9th Cir. 2009). Section 1415(j) provides that "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child …."

---

[1] Plaintiff was born on September 5, 1998. Dkt. 20-1, Broussard Decl., Ex. 1 at 1.

The IDEA does not expressly define "current educational placement." However, courts have generally construed the phrase to mean "the placement described in the child's most recently implemented IEP." Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1180 (9th Cir. 2002).

### B.   FACTUAL HISTORY

As indicated, Plaintiff was born on September 5, 1998. Broussard Decl., Ex. 1 at 2. Plaintiff resides within the Shoreline Unified School District ("District"), which is a member of the Marin County Special Education Planning Area ("SELPA"). Id. Plaintiff was found eligible for special education on September 21, 2005. Id.

Prior to that finding, beginning on August 28, 2003, Plaintiff attended kindergarten class at the Inverness School, a District program, where he stayed for approximately one month. Id. 3. Shortly after Plaintiff entered kindergarten, his parents began to look for a school that would be more suitable for Plaintiff's developmental stage. Id. On September 23, 2003, Plaintiff's mother submitted an application to enroll Plaintiff in the two-year kindergarten program at the Marin Waldorf School ("Marin Waldorf") in San Rafael. Id. During the two year kindergarten program, Plaintiff "appeared 'dreamy' and had problems following directions." Id. Plaintiff's parents were advised to seek a special education evaluation from the school district. Id. Plaintiff's father called the local elementary school, West Marin School, requesting that the District test Plaintiff for auditory processing. Id. 3-4. He was told that the District would perform a complete assessment of Plaintiff. Id. 4.

On or about May 23, 2005, the District presented an assessment plan to Plaintiff's parents, which they approved. Id. Plaintiff was to be evaluated by: a school psychologist in the areas of reasoning/cognitive abilities development and behavior/adaptive behaviors; a resource specialist in achievement, mathematics, and spelling and written expression; and by a speech and language pathologist ("SLP") in oral language/auditory processing, articulation, and oral peripheral examination.[2] Id.

---

[2] A resource specialist is a credentialed special education teacher who provides individual or small group remedial-type instruction. Id. 4 n.3.

- 3 -

### 1. The September 2005 Assessment and IEP Team Meeting

Plaintiff was initially assessed in September 2005 by a school psychologist, a resource specialist, and a SLP. Id. At the time of the evaluation, Plaintiff had just turned seven years of age. Id. The assessment determined, among other things, that Plaintiff showed evidence of a learning disability in visual and auditory processing skills. Id.

On September 21, 2005, an IEP meeting took place at the West Marin School to review the assessments, determine whether Plaintiff was eligible for special education, and to propose an IEP, which would include an offer of placement and services. Id. 8. The ALJ noted in the August 3, 2009 decision at issue that:

> The team failed to discuss or adopt any goals or objectives for Student. The IEP team offered Student placement in a general education class in a District elementary school with Resource Specialist assistance four days per week for 45 minutes each day. Additionally, the IEP team offered accommodations of extended time to complete Language Arts assignments, give directions in a variety of manners, increase verbal responses, extend time for tests, and taped books. The team did not discuss or review any alternative placements. Father declined the offer and elected to retain Student at Marin Waldorf. Id.[3]

### 2. The October 2008 Assessment

Plaintiff continued attending Marin Waldorf during the 2006-2007 and 2007-2008 school years. Id. 9-10. During the 2007-2008 school year, Plaintiff's teacher advised the parents to have Plaintiff reassessed by the District "so that we can devise a plan for his next steps of development." Id. 10. Plaintiff's father contacted the District and requested that Plaintiff, now in the fourth grade, be reassessed. Id. On September 10, 2008, the District forwarded to the parents an assessment plan calling for evaluations by a school psychologist, resource specialist, and a SLP. Id. The plan indicated that the assessment may consist of evaluations in the areas of: Academic Performance in reading, written language, and mathematics; Health Status; Cognitive Ability; Receptive and Expressive Language; and Perceptual Skills. Id. Plaintiff's father signed a Consent for Assessment. Id. Plaintiff was assessed by a resource specialist and a school psychologist. Id. 11-12. However, Plaintiff was never assessed by a SLP. Id. 11.

---

[3] The ALJ concluded that the September IEP, "on its face, is not appropriate." Id.

The resource specialist concluded that, while Plaintiff had deficits in reading, his reading skills were not significantly below his language abilities. Id. 12. She found that Plaintiff lacked an understanding of fundamental math skills. Id. She further found that student could work independently, but required guidance and extended time to complete assignments. Id. She recommended that Plaintiff receive "remediation in mathematics to give him the foundational skills he now lacks in order to be able to progress to math work that presumes and requires these skills, concepts, such as coin values." Id.

The school psychologist who assessed Plaintiff recommended that the IEP team find Plaintiff eligible for special education in the category of Specific Learning Disability in Math. Id. 13. She also concluded that Plaintiff "does not appear to have ADHD." Id. She recommended that Plaintiff be "asked to repeat back instructions to check for comprehension; use pictures, gestures and demonstrations to accompany oral directions or longer messages, extend time on assignments and tests … because of his sequential reasoning deficits." Id.

### 3. The November 12, 2008 IEP Meeting

On November 12, 2008, an IEP meeting was convened at the West Marin School. Id. 14. The team agreed that Plaintiff was eligible for special education under the category of Specific Learning Disability in the area of mathematics problem solving, based on a discrepancy in Plaintiff's testing scores. Id. The team identified that discrepancy as being directly related to Plaintiff's visual and auditory processing disorder. Id. Anne Harris, the principal of West Marin School, described the resource specialist program at West Marin School. Id. Harris discussed placing Plaintiff in a fourth grade general education class at West Marin School with an unspecified amount of time in the Learning Center, a resource specialist program. Id. While Elizabeth Conlin, a resource specialist, had drafted two proposed math goals, neither these nor any other proposed goals were discussed. Id. The ALJ noted in his August 3, 2009 decision that Plaintiff's parents were not presented with any alternative placement options within the District or through the SELPA that may have been appropriate for Plaintiff. Id. The parents were not satisfied with the only placement discussed and inquired if services would be available if Plaintiff remained at Marin Waldorf. Id. 14-15. They were told

1  that no such services were available. Id. 15.  The parents elected to keep Plaintiff at Marin
2  Waldorf. Id.
3      On February 13, 2009, Marin Waldorf advised Plaintiff's parents that he would not be
4  invited to return for the next school year. Id.

### C. PROCEDURAL HISTORY

On March 17, 2009, Plaintiff filed a request for a due process hearing.  The due process hearing commenced on May 26, 2009 before an OAH administrative law judge and continued for several days.  The issues presented to the ALJ included whether: (1) the District denied Plaintiff a FAPE from March 17, 2007 through November 11, 2008 by failing to convene an IEP team meeting and make Plaintiff a FAPE offer; (2) Plaintiff was entitled to be reimbursed for the cost of an independent educational evaluation of a neuropsychological assessment obtained by Plaintiff's parents; and (3) the District denied Plaintiff a FAPE since the November 12, 2008 IEP team meeting by procedurally violating the IDEA through failing to make a FAPE offer, failing to have a regular education teacher present, and failing to develop goals and objectives. Id. 2.

Plaintiff requested, among other things, reimbursement for the cost of his placement at Marin Waldorf (including tuition and transportation) from March 17, 2007 through the end of the 2008-2009 school year, and an order directing the District to convene an IEP team meeting and place Plaintiff at Star Academy, a nonpublic school, where Plaintiff had been accepted for the 2009-2010 school year. Id.  The District's position was that it was not liable to Plaintiff, and, if it was found liable, the appropriate remedy was to order further assessments and a new IEP team meeting to determine an appropriate placement. Id. 18.

On August 3, 2009, the ALJ issued a detailed decision, concluding that, as to the first issue, Plaintiff's claim was barred by the applicable statute of limitations. Id. 22.  As to the second issue, the ALJ denied Plaintiff's request for reimbursement of the independent neuropsychological assessment. Id. 25  As to the third issue, the ALJ found in favor of Plaintiff, and determined that the District had denied Plaintiff a FAPE since the November 12, 2008 IEP team meeting. Id. 23-24.  The ALJ also ordered – after finding that Marin Waldorf

was an appropriate placement – that Plaintiff be reimbursed for the cost of Plaintiff attending Marin Waldorf from December 1, 2008 through the end of the 2008-2009 school year. Id. 19, 26. Furthermore, the ALJ ordered that "[w]ithin 21 days from the date of this decision, the District shall convene an IEP team meeting to determine an interim IEP for Student" and "[w]ithin 60 days of the date of this decision, the District shall convene an IEP team meeting to formulate an IEP for Student including reviewing all evaluations, adopting goals and objectives, and determining placement, services and accommodations to meet all of Student's unique needs." Id. 26. However, while the ALJ generally discussed the program at Star Academy, he did not make a finding that it was, or was not, an appropriate placement for Plaintiff. Id. 19.

Plaintiff's father participated in two subsequent IEP meetings that were held in accordance with the ALJ's order. Dkt. 20-2, K.L. Decl. ¶ 2. Without providing any details, Plaintiff's father avers that "[n]either of the IEP meetings resulted in an offer of a free appropriate public education for D.L. and both were deficient both procedurally and substantively." Id. ¶ 3. He also states that "[a]fter the District failed to make an appropriate placement offer at the IEP meeting in August 2009, which was ordered by the ALJ, I formally enrolled D.L. at STAR Academy in San Rafael, California." Id. ¶ 9.

On October 7, 2009, Plaintiff filed a "motion to stay put" before the OAH. Broussard Decl., Ex. 2 at 1. On October 14, 2009, the ALJ denied that motion on the ground that the OAH no longer had jurisdiction over the matter, in view of Plaintiff's filing of the instant appeal in this Court on October 6, 2009. Id.

### D. THE INSTANT ACTION

Plaintiff filed this action on October 6, 2009 to appeal the August 3, 2009 OAH decision and the determinations made in the District's favor. Plaintiff also seeks an order requiring Defendant to reimburse him for costs of obtaining an education at Star Academy. One of the grounds for Plaintiff's appeal is that the ALJ "failed to provide a resolution to the issue by determining the appropriate placement going forward and left the parents in the same position they were before the hearing. Though the ALJ determined the District failed to offer

the student a FAPE, he did not order a placement for the 2009-2010 school year. Instead, the parents were ordered to participate in two more IEPs, without any direction to the District to correct their procedural or substantive violations and leaving the student without a placement, if the District again failed to make an offer which provided FAPE." Dkt. 1 at 10.

Plaintiff now moves for a preliminary injunction, under the stay put provision of the IDEA, ordering Defendant to: (1) reimburse Plaintiff for his placement at Star Academy from August 21, 2009 through "the date of the stay put order," including reimbursement of transportation expenses; and (2) fund Plaintiff's placement at Star Academy until final resolution of this matter, including provision of transportation expenses.

On May 3, 2010, the Court requested that the parties submit additional briefing regarding the impact, if any, that the Ninth Circuit decision N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ., 600 F.3d 1104 (9th Cir. 2010), issued after briefing on this motion closed, may have on the instant preliminary injunction analysis. The parties submitted their additional briefing on May 7, 2010.[4]

## II.   LEGAL STANDARD

The Ninth Circuit has held that a motion for a stay put order "functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the

---

[4] The standard set forth in Joshua A. v. Rocklin Unified School Dist., 559 F.3d 1036 (9th Cir. 2009) (described below) controls the instant analysis, as N.D. is distinguishable. In N.D., the Ninth Circuit considered whether the district court properly applied the preliminary injunction balancing test when determining whether to issue an injunction to stop the defendant from implementing furlough days that would shut down schools. The plaintiffs, who were disabled students, argued that the furloughs constituted a change in their then-current educational placement. Importantly, in N.D., the named plaintiff had already invoked the stay put provision at the administrative level, as part of his request for a due process hearing. N.D., 600 F.3d at 1108. The plaintiffs moved, at the district court level, for a preliminary injunction ordering the defendant "to recognize the invocation of the stay-put provisions" made at the administrative level. Id. at 1112. The Ninth Circuit held that the motion was subject to the balancing test required for preliminary injunctions, and the automatic nature of the stay put provision did not apply, because the motion was for an injunction that "affect[ed] a stay-put invocation, not the stay-put invocation itself." Id. at 1112. As noted by the N.D. court, the automatic nature of the stay put provision applied in Joshua A. because, there, the court "was ruling on the substance of the motion itself." Id. Similarly, in this case, Joshua A. applies because Plaintiff has presented his motion for stay put directly with this Court.

- 8 -

traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." Joshua A. v. Rocklin Unified School Dist., 559 F.3d 1036, 1037 (9th Cir. 2009).

Under the stay put statute, "the inquiry focuses on identifying 'the then current educational placement,' and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act." Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2nd Cir. 1982).

## III.  ANALYSIS

Plaintiff concedes that he "currently has no stay put placement" because the ALJ determined that, as of the August 3, 2009 decision, the District had never offered Plaintiff a FAPE. Pl.'s Mot. 8. Plaintiff further concedes that the "only placement ever found appropriate for D.L. was the Marin Waldorf unilateral parental placement, which the ALJ specifically found to be appropriate." Id. Nevertheless, Plaintiff argues that Star Academy should be found to be his stay put placement because he "is entitled to a stay put placement by law," and the "last and only placement found appropriate was the parent's unilateral private placement choice." Id. 11. Plaintiff further avers that the "selection of another non-public school is not unreasonable in this case to maintain the status quo." Id. With respect to the IEP meetings that took place after the ALJ decision, Plaintiff states simply, without elaboration, that "the District failed to make an appropriate placement offer at the IEP meeting in August 2009 …." Id.

Plaintiff's argument that Star Academy is his stay put placement runs contrary to the language of the stay put statute and controlling Ninth Circuit precedent. Section 1415(j) provides that "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child …." 20 U.S.C. § 1415(j) (emphasis added). The Ninth Circuit has construed "current educational placement" to mean "the placement described in the child's most recently implemented IEP." Johnson, 287 F.3d at 1180 (emphasis added). As Plaintiff admits, Star Academy was never identified as a

1  placement option in any IEP.  Moreover, the ALJ did not find in his August 3, 2009 decision
2  that Star Academy was an appropriate placement.  Additionally, Star Academy cannot be
3  considered a "then current" placement because Plaintiff was not enrolled there until <u>after</u> the
4  ALJ ordered further IEP meetings.
5        Given the facts presented, <u>L.M. v. Capistrano Unified School Dist.</u>, 556 F.3d 900 (9th
6  Cir. 2009) is instructive.  In <u>L.M.</u>, the plaintiff challenged the district court's denial of a stay
7  put order.  The plaintiff never had an implemented IEP because the defendant and the
8  plaintiff's parents never agreed on a placement.  <u>Id</u>. at 903.  At the time the litigation
9  commenced, the plaintiff was making his initial application for public school.  <u>Id</u>.  The <u>L.M</u>.
10 court noted: "[b]ut rather than consenting to L.M. being placed in a public school for the
11 duration of the litigation as provided for in § 1415(j), Parents unilaterally placed L.M. in a very
12 expensive private program."  <u>Id</u>.  In affirming the district court's denial of a stay put order, the
13 L.M. court held "[b]ecause L.M.'s private program, chosen by his parents alone, does not
14 qualify as a 'current education placement' under § 1415(j), the 'stay-put' provision does not
15 apply and the district court properly denied Parents' motion."  <u>Id</u>. at 904.  Furthermore, the
16 court held "[u]nless the district court or agency actually reaches the merits of the appropriate
17 placement, we will not imply a 'current educational placement' for purposes of § 1415(j)."  <u>Id</u>.
18 Likewise, in this case there has been no determination that Star Academy, which was
19 unilaterally chosen by Plaintiff's parents, is an appropriate placement.  Therefore, Star
20 Academy does not qualify as a "current educational placement" under section 1415(j).
21       Plaintiff does not attempt to distinguish <u>L.M</u>.  Rather, Plaintiff relies on <u>Brad J. v.</u>
22 <u>Commonwealth of Penn.</u>, 22 IDELR 712 (E.D. Pa. 1995) (Broussard Decl., Ex. 3) in support of
23 his argument that "[w]here the school district has been found to be at fault in the placement
24 process of a student with a disability and its shortcomings have resulted in some harm to the
25 student, the unilateral private placement is the stay put placement."  Pl.'s Mot. 7.  However,
26 <u>Brad J</u>. cannot be so broadly construed.  There, the court considered whether the defendant was
27 required to reimburse the plaintiff, under the stay put provision, for expenses paid on
28 homebound instruction during the 1994-1995 school year.  The defendant argued that the

1 plaintiff should be placed at a certain high school pending the outcome of the litigation, and
2 that homebound instruction was not a placement dictated by an IEP. Id. at 7. However, the
3 high school in question had been found to be an inappropriate placement by the ALJ. Id.
4 Moreover, the plaintiff had already been placed by the district on homebound instruction
5 during the 1993-1994 school year, though that was not the result of an IEP. Id. at 3. The
6 district court found that the parents "acted reasonably by enrolling him in homebound
7 instruction pending the outcome of the dispute." Id. at 7. Importantly, there, the plaintiff had
8 already been in homebound instruction during the prior school year. By contrast, Plaintiff in
9 this case was not enrolled in Star Academy until after the ALJ's decision. Put simply, Star
10 Academy is not the "status quo" to be maintained under the stay put statute.

11 Plaintiff's reliance on Tindell v. Evansville-Vanderburgh School Corp., 54 IDELR 7 (S.
12 D. Ind. 2010) (Dkt. 22, Statement of Recent Decision) is also unavailing. There, the plaintiff's
13 initial school placement was closing. The plaintiff sought an injunction permitting transfer of
14 the student to another program at the defendant's expense. The Indiana District Court ordered
15 the defendant to pay for the placement chosen by the plaintiff during the appeal process
16 because the defendant had proposed no other alternative placement. Id. at 5. In this case,
17 Plaintiff indicated that Defendant made a placement offer at the August 2009 IEP meeting,
18 which Plaintiff's parents rejected for unspecified reasons. Thus, Tindell is inapposite.

19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

In sum, under the stay put statute and controlling Ninth Circuit precedent, the Court finds that Star Academy is not Plaintiff's "stay put placement," and therefore Plaintiff's motion for a preliminary injunction is denied.[5]

## IV.   CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Preliminary Injunction is DENIED.

2. This matter is REFERRED to the Chief Magistrate Judge or her designee for a mandatory settlement conference to take place within sixty (60) days from the date of this Order.

3. A telephonic Case Management Conference is scheduled in this matter for December 16, 2010 at 2:45 p.m.  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than

---

[5] Defendant makes several factual allegations in its opposition brief.  However, Defendant failed to include any supporting affidavit or declaration with its opposition, in violation of Civil Local Rule 7-5(a), which requires that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration …."  While Defendant included a declaration from District Superintendant Stephen Rosenthal in support of its additional briefing regarding the N.D. decision, Plaintiff objects to that declaration under Civil Local Rule 7-5(b).  Rule 7-5(b) provides that "[a]n affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument.  Any statement made upon information or belief must specify the basis therefor."  (Emphasis added.)  Federal Rule of Civil Procedure 56(e) requires that affidavits or declarations "must be made on personal knowledge …."  The Court agrees that the Rosenthal Declaration is improper.  Mr. Rosenthal declares only that he is "readily familiar with the facts testified to herein."  Dkt. 50-1 at 1 (emphasis added).  He fails to declare that he has personal knowledge of the factual contentions made in his declaration.  He also makes inappropriate arguments.  See e.g., id., ¶ 7 ("As argued in the District's opposition, Plaintiff's parents had no intention of allowing their child to attend public school …. their goal was to find a way to require the District to pay the tuition for the private school placement.").  Accordingly, the Rosenthal Declaration is not competent evidence and has not been considered.  Defendant is admonished to comply with the Federal Rules of Civil Procedure and the Court's Local Rules in future briefing.

In addition, the Court notes that Defendant – through its inadequate briefing – also argues that Plaintiff is attempting to circumvent the administrative process by failing to challenge the two IEP meetings held after the ALJ's decision through a due process hearing.  In view of the above analysis, it is not necessary for the Court to reach the merits of that issue.

ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

4. This Order terminates Dockets 20 and 55.[6]

IT IS SO ORDERED.

Dated: September 30, 2010

SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[6] After the close of briefing, on June 6, 2010, Plaintiff filed a five-page "Notice of Administrative Motion and Administrative Motion for Leave to File Document Because of Emergency Circumstances," asking for leave to submit a "three page supplemental brief and declarations" on the "emergency circumstances of the upcoming critical enrollment and payment dates" at Star Academy because the information pertains to the "timing of the issuance of the injunction." Dkt. 55. In that motion, Plaintiff outlines the enrollment and payment deadlines at Star Academy for the upcoming school year. Because Plaintiff's preliminary injunction motion fails on its merits, regardless of the payment deadlines at Star Academy, Plaintiff's Administrative Motion is DENIED.